UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RODERICK IVORY, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | |
| ) | |
| CIVIL CITY OF SOUTH BEND ) | |
| INDIANA, OFFICER JESS ELLIOT, ) | CAUSE NO.3:04-CV-618 RM |
| SGT. JAMES WOLFF, OFFICER ) | |
| JOHN DOE AND JOHN ROE ) | |
| whose true Christian names are ) | |
| unknown, AND THOMAS FAUTZ, ) | |
| CHIEF OF POLICE, SOUTH BEND ) | |
| POLICE DEPARTMENT, all in their ) | |
| official and personal capacity ) | |
| ) | |
| Defendants ) | |

OPINION and ORDER

Officer Roderick Ivory alleges the defendants violated his rights under the First, Fourth, and Fourteenth Amendments of the United States Constitution and Article 1 § 9, 11, 12, and 15 of the Indiana State Constitution. The defendants move for summary judgment on certain claims pursuant to Federal Rule of Civil Procedure 56.[1] For the following reasons, the court grants in part and denies in part the defendants' motion.

---

[1] In addition to the claims subject to this summary judgment motion, Officer Ivory pleaded in his complaint the alleged incident on September 29, 2002 resulted in violations of his First and Fourteenth Amendments under the United States Constitution and Article 1 §§ 9 and 12 of the Indiana Constitution. Neither party addressed these claims at the summary judgment stage, so this order doesn't address the propriety or existence of such claims.

FACTS

The following relevant facts are recited only for the purpose of resolving the summary judgment motion and are taken in the light most favorable to Officer Ivory as legally possible.

Roderick Ivory was a patrolman with the City of Columbus, Indiana Police Department. In the early hours of September 29, 2002, Ms. Evelyn Spann awoke when she heard a noise outside her home. At her front door, Ms. Spann saw a car not her own pull out of her driveway and drive away. Ms. Spann went outside to find that her car had incurred damage, prompting her to call the police.

The South Bend Police Department dispatched Officer Ernsberger to investigate the hit and run. Around 1:30 a.m., Officer Ernsberger knocked on Ms. Martina Thomas's door to tell her that the car seen damaging Ms. Spann's car had come from Ms. Thomas's driveway. At this point, Officer Ernsberger left the scene and Ms. Spann returned to her home.

About twenty minutes later, Officer Ivory, Marsha Duckworth (Officer Ivory's sister), Steven Bethel (Officer Ivory's nephew) and Ms. Thomas went to Ms. Spann's home to discuss the events surrounding the damage to her car. Officer Ivory explained that Mr. Bethel had taken his car without permission, and it was when Mr. Bethel pulled out of the driveway that he caused the damage to Ms. Spann's car. The group discussed how to fix the damage, and Officer Ivory, Ms. Thomas, Ms. Duckworth, and Ms. Spann agreed that the police should be called back to the scene. The purpose of the call would be to make an official record of

2

the circumstances that led to the damage and to ensure the police would be informed that the driver of the car that had caused the damage had been identified.

Officer Ivory called the South Bend Police Department to ask that a police officer return to the scene because all the parties were now present. After waiting about thirty minutes, Ms. Thomas called the number left by Officer Ernsberger and discovered he was on another call, but should be on the way soon. After another ten minutes passed, Officer Jess Elliott and Officer Dominic Zarate arrived at the scene.

Neither officer had discussed the original investigation with Officer Ernsberger, so Officers Elliott and Zarate needed to talk to someone about the reason for the follow-up call. Officer Elliott asked to speak with the person who made the follow-up call to the dispatcher. Officer Ivory identified himself as that person, but didn't identify himself as a police officer.

There are factual disputes as to why the following events occurred: Officer Ivory claims it was without provocation, while Officer Elliott asserts he had valid reasons. After Officer Elliott and Officer Ivory discussed the hit and run, Officer Elliott reached for Officer Ivory's hand to place him in handcuffs. When Officer Ivory pulled away, Officer Elliott placed Officer Ivory in an arm-bar, put him to the ground, put him in a headlock, and handcuffed him. Officer Zarate, after observing (without action) both the verbal and physical interaction between Officers Elliott and Ivory, assisted with placing Officer Ivory in handcuffs. Officer

Ivory contends he suffered injuries when Officer Elliott put him to the ground and put him in a headlock, and when he was placed in handcuffs.

Sometime after Officer Ivory was handcuffed, he was escorted to Officer Elliott's police car. During this escort, Officer Ivory told Officer Elliott that he was a law enforcement officer for the City of Columbus, Indiana and had a state-issued firearm on his person. Officer Elliott removed the firearm, located Officer Ivory's identification, and placed Officer Ivory in the back of the police car. He also performed a breathalyzer test, the results of which are unknown. Officer Elliott told Officer Zarate of the firearm's discovery and Officer Ivory's potential status as a police officer, and said they should call in a supervisor.

Sergeant Wolff arrived at the scene and recognized Officer Ivory. After Sergeant Wolff discussed the preceding events with Officers Elliott and Zarate, Officer Elliott removed Officer Ivory's handcuffs.

## TORT CLAIM NOTICE

The defendants say Officer Ivory did not timely comply with the notice provision of the Indiana Tort Claims Act, so all of his state law claims are barred. Before a plaintiff can proceed on tort claims against a political subdivision, he must notify "the governing body of that political subdivision; and . . . the Indiana political subdivision risk management commission . . . within one hundred eighty (180) days after the loss occurs." IND. CODE § 34-13-3-8. This notice must be in writing and can be delivered via certified mail. IND. CODE § 34-13-3-12. When

4

notice is given via certified mail, it is effectuated on the date of the mailing of the notice and not the date of receipt. <u>Wallis v. Marshall County Comm'rs</u>, 546 N.E.2d 843, 844 (Ind.1989); <u>Orem v. Ivy Tech State College</u>, 711 N.E.2d 864, 869 (Ind. App. 1999).

The record contains the uncontested affidavit of Mr. Douglas Grimes, Officer Ivory's attorney, which states he notified the South Bend City Council of Officer Ivory's alleged loss via certified mail on March 24, 2003. Mr. Grimes also avers that he notified the Indiana political subdivision risk management commission of Officer Ivory's alleged loss via certified mail on March 28, 2003. The uncontested record indicates the defendants received timely notice within 180 days of Officer Ivory's alleged loss.

OFFICERS JESS ELLIOTT AND DOMINIC ZARATE

Mr. Ivory brings both federal and state law claims in his complaint against Officers Elliot and Zarate. Because the record contains genuine issues of material fact as to whether Officers Elliott and Zarate violated Officer Ivory's federal and state rights on September 29, 2002, the only issue to resolve is whether the officers are immune from the claims.

Under federal law, Officers Elliott and Zarate are immune from 42 U.S.C. § 1983 claims only if the doctrine of qualified immunity shields them from liability.

> Qualified immunity protects officers performing discretionary functions from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights that a reasonable

5

>person would know about. A plaintiff seeking to defeat this defense in a Section 1983 action must show, first, that the plaintiff's rights were violated. Second, the plaintiff must show that the law concerning the plaintiff's asserted right was clearly established at the time the challenged conduct occurred. Finally, the court must determine whether a reasonably competent official would know that the conduct was unlawful in the situation he confronted.

Mustafa v. City of Chicago, --- F.3d ----, No. 05-2101, 2006 WL 724828 at *3 (7th Cir., March 23, 2006) (citations and emphasis omitted). Officer Ivory's version of the events, if believed, show that his Fourth Amendment rights were violated. Officer Ivory's right under the Fourth Amendment to be free from false arrest, false imprisonment, and having excessive use of force inflicted upon him was clearly established prior to September 29, 2002, Graham v. Connor, 490 U.S. 386 (1986), as was an officer's potential duty to intervene to prevent harm if he had a realistic opportunity to do so. Byrd v. Brishe, 246 F.2d 6 (7th Cir. 1972) . The only issue, then, is whether a reasonably competent officer would know that the officers' conduct was unlawful in the situation they confronted.

Officer Ivory's deposition and affidavit provide a factual account that, if believed, would render Officer Elliott's conduct unreasonable. That alone precludes a finding that Officer Elliott enjoys qualified immunity. Morfin v. City of East Chicago, 349 F.3d 989, 1000 (7th Cir. 2003) (when the arrestee presents adequate evidence that, if believed, would render the arresting officer's conduct unreasonable, then a genuine issue of material fact exists, and a finding that the officer enjoys qualified immunity is improper).

6

The same is true for Officer Zarate. Officer Ivory argues that Officer Zarate is liable under § 1983 because he was present and failed to intervene to prevent Officer Elliot from infringing Officer Ivory's constitutional rights. Officer Ivory could prevail if he shows that Officer Zarate had reason to know: "(1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring." Lanigan v. Village of East Hazel Crest, Ill., 110 F.3d 467, 477-478 (7th Cir. 1997).

Again, the record shows genuine issues of fact whether Officer Zarate had reason to know that a constitutional violation had been committed by Officer Elliott and whether Officer Zarate had a realistic opportunity to intervene. Because of these factual issues, the court cannot find as a matter of law that a reasonably competent officer in the same situation would not have known his failure to intervene was unlawful, and thus cannot find that Officer Zarate is entitled to qualified immunity.

In regards to the state claims, the only basis the defendants advance for immunity on Officer Ivory's state law claims is the timeliness of the tort claims notice, so the court declines to grant summary judgment on Officer Ivory's state law claims against Officers Elliott and Zarate. FED. R. CIV. P. 56(c) (requiring the moving party to move on the claim he or she seeks summary judgment upon).

7

### SERGEANT RICK WOLFF, OFFICER ROE, AND CHIEF THOMAS FAUTZ

Sergeant Wolff, Officer Roe, and Chief Fautz seek summary judgment on all claims because the record does not support a finding, under any theory, that they are liable to Officer Ivory for the alleged conduct contained in his complaint. Officer Ivory's response does not address those arguments. As stated in FED. R. CIV. P. 56(e):

> [w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Sergeant Wolff, Officer Roe, and Chief Thomas Fautz have provided adequate and unrebutted reasons to dismiss the claims against them, and the record supports such a finding, so summary judgment on all claims against them is proper. FED. R. CIV. P. 56(e); *see also* Sanders v. Village of Dixmoor, Ill., 178 F.3d 869, 870 (7th Cir. 1999) ("It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered." (citation omitted)).

### CITY OF SOUTH BEND

Officer Ivory can on prevail on his § 1983 claims against the City of South Bend if he shows: "(1) he suffered a deprivation of a federal right; (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a

8

decision-maker with final policy-making authority for the [municipality]; which (3) was the proximate cause of his injury." Ienco v. City of Chicago, 286 F.3d 994, 998 (7th Cir. 2002) (citing Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 690-691 (1978)).

Officer Ivory argues that he suffered a violation of his Fourth Amendment rights as a result of a widespread custom of the City of South Bend "to seize members fo the public [by way of its police department], handcuff them, and detain them even though the officer did not reasonably suspect that the person had committed, was committing, or about to commit a crime and not arrest the person." Response Part 1 at p.19. The record does not support allowing this claim to proceed because there is no evidence of the widespread custom alleged by Officer Ivory. The only widespread custom that a reasonable fact-finder could infer from the record is one where police officers, for reasons of safety, place a person in handcuffs after there is reasonable suspicion of criminal activity. This custom is not unconstitutional. *See* United States v. Stewart, 388 F.3d 1079, 1084 (7th Cir. 2004) ("The permissible scope of a *Terry* stop has expanded in recent years to include the use of handcuffs and temporary detentions in squad cars.") (emphasis in original). In the absence of evidence of a widespread custom that proximately caused his injuries, Officer Ivory cannot proceed with his § 1983 claims against the City of South Bend.

However, under Indiana law an employer is vicariously liable for the wrongful acts of its employees committed within the scope of their employment.

9

Warner Trucking, Inc. v. Carolina Casualty Ins. Co., 686 N.E.2d 102, 105 (Ind.1999). The parties haven't addressed the propriety of holding the City of South Bend vicariously liable for the alleged state law claims asserted against Officers Elliott and Zarate, so those claims may proceed.

## CONCLUSION

For the reasons stated above, the court GRANTS IN PART AND DENIES IN PART the defendants' motion for summary judgment [Doc No. 32]. The motion is GRANTED with respect to all claims against Sergeant Wolff, Officer Roe, and Chief Fautz and the § 1983 claims against the City of South Bend. The motion is DENIED with respect to all claims against Officer Elliott and Officer Zarate, and the state law claims against the City of South Bend, Indiana.

SO ORDERED.

ENTERED: April 13, 2006

                                          /s/ Robert L. Miller, Jr.
                                          Chief Judge
                                          United States District Court